**ROBERT HOEPPNER,**

    **Plaintiff,**

    **v.**                        **Case No. 20-CV-582**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security[1],**

    **Defendant.**

## DECISION AND ORDER

    Robert Hoeppner seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for a period of disability and disability insurance benefits and a Title XVI claim for supplemental security income under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision will be reversed and the case remanded for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

## BACKGROUND

    Hoeppner's journey through the SSA's administrative process began over a decade ago when he filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on March 9, 2010. (Tr. 176.) In both applications, Hoeppner alleged disability beginning on January 15, 2009 (*id.*) due to nerve damage to the lower back and right leg (Tr. 347). Hoeppner's claims were denied

---

[1] The court has changed the caption to reflect Kilolo Kijakazi's recent appointment as acting commissioner.

initially and upon reconsideration, a hearing was held on January 23, 2012, and Administrative Law Judge ("ALJ") Mary L. Everstine denied his claims for disability on February 17, 2012. (Tr. 176–85.) Hoeppner appealed the decision to the Appeals Council, who remanded the case to the ALJ to reconsider his residual functional capacity ("RFC"), specifically regarding whether the restriction to unskilled work adequately accounted for Hoeppner's moderate limitations in concentration and persistence. (Tr. 191–93.)

Upon remand from the Appeals Council, a second hearing was conducted on June 13, 2014 before ALJ Wayne L. Ritter, who determined in a decision issued September 14, 2014 that Hoeppner was not disabled under the regulations. (Tr. 24–38.) Hoeppner again appealed to the Appeals Council, who denied review. (Tr. 1–5.) Hoeppner filed suit in the Eastern District of Wisconsin challenging the ALJ's decision in February 2016. *See Hoeppner v. Colvin*, Case No. 16-CV-128-WCG (E.D. Wis.). The case was remanded upon the joint stipulation of the parties in September 2016. (Docket # 17 in Case No. 16-CV-128.)

A third hearing was held before ALJ Ritter on September 6, 2017, and on October 16, 2017, ALJ Ritter again denied Hoeppner's disability claims. (Tr. 1686–1707.) Hoeppner again sought judicial review and the case went before United States District Judge William C. Griesbach in December 2017. *See Hoeppner v. Saul*, Case No. 17-CV-1775 (E.D. Wis.). Hoeppner did not challenge the ALJ's findings with respect to his physical impairments; rather, Hoeppner argued that the ALJ failed to adequately incorporate the moderate limitations in his concentration, persistence, or pace caused by his mental impairments in his RFC and in the corresponding hypothetical questions posed to the vocational expert ("VE"). (Tr. 1723.)

In a published decision issued on March 14, 2019, Judge Griesbach reversed and remanded Hoeppner's case. *Hoeppner v. Berryhill*, 399 F. Supp. 3d 771 (E.D. Wis. 2019). Judge Griesbach analyzed the ALJ's step three assessment of Hoeppner's mental impairments, which included affective disorder, somatoform disorder[2], and a learning disorder. *Id.* at 773. The ALJ found Hoeppner had moderate limitations in concentration, persistence, or pace and in so finding, the ALJ relied on the May and September 2010 opinions of State agency psychologists Drs. Kyla King and Joan Kojis, as well as the May 2016 opinion of State agency psychologist Ellen Rozenfeld. *Id.* at 774. The State agency psychologists opined that Hoeppner had moderate limitations in the following areas:

- the ability to understand, remember, and carry out detailed instructions;

- the ability to maintain attention and concentration for extended periods;

- the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and

- the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

*Id.* at 774–75. To accommodate these moderate limitations, the ALJ limited Hoeppner to "simple, routine, and repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional workplace changes, and only occasional interaction with the public and supervisors." *Id.* at 773. The ALJ explained his accommodations as follows:

---

[2] A somatoform disorder is defined as a group of disorders in which physical symptoms suggesting physical disorders for which there are no demonstrable organic findings or known physiologic mechanisms, and for which there is positive evidence, or a strong presumption that the symptoms are linked to psychological factors; e.g., hysteria, conversion disorder, hypochondriasis, pain disorder, somatization disorder, body dysmorphic disorder, and Briquet syndrome. Somatoform disorder, Stedmans Medical Dictionary.

3

The limitations to simple, routine and repetitive work obviously address the claimant's moderate limitations in understanding, remembering and applying information; moreover, they would also require less ability to concentrate, persist or maintain pace than would more complex work tasks. Limiting the claimant to no fast-paced work also addresses his moderate limits in concentration, persistence and pace, since fast-paced work logically requires more focus and attention than slower-paced work. Similarly, limiting the claimant to simple work-related decisions addresses the claimant's moderate limitations in understanding, remembering and applying information as well as his need to concentrate and persist in work tasks despite moderate limitations in these areas. Limiting the amount of change in the workplace likewise eases the level of concentration and persistence required for successful task completion.

*Id.* at 775 (citing Tr. 927.) Judge Griesbach found that while the ALJ may have thought that limiting Hoeppner to "simple, routine, and repetitive tasks, with no fast-paced work, only simple work-related decisions, occasional workplace changes, and only occasional interaction with the public and supervisors" sufficiently accounted for his moderate difficulties in concentration, persistence, or pace, the Seventh Circuit, most recently in *DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019), "has made clear that it [did] not." *Id.* Judge Griesbach noted that in *DeCamp*, the court of appeals rejected the limitation to "no fast-paced work" as an accommodation for moderate limitations in concentration, persistence, or pace. *Id.* at 775–76. Judge Griesbach further found that the ALJ's RFC failed to include the limitations he credited regarding performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances and completing a normal workday or workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest period. *Id.* at 776.

Judge Griesbach explained that:

It is now abundantly clear that under the law of this circuit, the ALJ must include in the RFC, and in the corresponding hypothetical question to the VE, all of the limitations the ALJ finds in the paragraph B criteria at steps 2 and 3 of the sequential evaluation, as well as those in the "summary conclusions" or

4

> "worksheet" section of the MRFCA form. It is also clear that under the law of this circuit, "moderately limited" means more than some impairment. Exactly what more it means is unclear. While the ALJ's attempt to translate such a limitation into job-related restrictions that fits within a VE's terminology is understandable, doing so risks likely appeal and almost certain reversal.

*Id.* at 778. Judge Griesbach determined that if he was "writing on a clean slate," he would uphold the ALJ's RFC finding regarding accommodating Hoeppner's moderate limitations in concentration, persistence, or pace; however, as he was bound by Seventh Circuit precedent, he was compelled to remand for further proceedings. *Id.* at 776–78.

Thus, Hoeppner's case was remanded again and a fourth hearing was held before ALJ Brent C. Bedwell on January 14, 2020. (Tr. 1637–82.) Hoeppner testified at the hearing, as did James Lozer, a VE. (Tr. 1637.) In a written decision issued February 10, 2020, ALJ Bedwell found that Hoeppner had the following severe impairments: lumbar spondylosis, peripheral neuropathy, depression, generalized anxiety disorder, attention deficit hyperactivity disorder, learning disorder, and somatoform disorder. (Tr. 1605.) The ALJ found that Hoeppner did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "Listings") (Tr. 1606–08), but found Hoeppner had moderate limitations with regard to concentrating, persisting, or maintaining pace (Tr. 1607).

The ALJ limited Hoeppner to a RFC of sedentary work, with the following restrictions: avoid exposure to heights, hazards, and moving machinery; limited to jobs that are unskilled and involve simple and routine tasks and instructions; limited to jobs having only occasional decision-making and changes in work setting; limited to occasional interaction with the public, co-workers, and supervisors; can maintain attention and concentration for two-hour segments; and limited to jobs involving no fast-paced work. (Tr.

5

1608.) The ALJ again relied on the opinions of State agency psychological consultants, Drs. King, Kojis, and Rozenfeld. (Tr. 1620.) The ALJ held that:

> [A] balancing of the overall evidence warrants a finding that he experiences moderate limitations in functioning associated with understanding, remembering, and applying information; interacting with others; concentrating, persisting, or maintaining pace; and in his ability to adapt and manage himself. The undersigned affords significant weight to those aspects of the State agency psychological consultant opinions, particularly expressed in their narrative explanations, finding the claimant experiences moderate limitations in functioning but retains the capacity for unskilled work. These narrative assessments are fully reflected in the residual functional capacity finding herein.

(Tr. 1621.) While the ALJ found that Hoeppner could not perform his past relevant work as a tire changer, assembler, construction worker, and metal fabrication shop helper; the ALJ found that given his age, education, work experience, and RFC, other jobs existed in significant numbers in the national economy that he could perform. (Tr. 1623–24.) As such, the ALJ found that Hoeppner was not disabled from January 15, 2009, through the date of the decision (February 10, 2020). (Tr. 1624.) Although I am unable to find the Appeals Council's denial of review of the February 10, 2020 decision in this voluminous record, the Commissioner does not contest that this decision is the final decision of the Commissioner. (Def.'s Br. at 2, Docket # 21.)

## DISCUSSION

### 1.  *Applicable Legal Standards*

An ALJ engages in a five-step sequential evaluation to determine whether a claimant is disabled in which the ALJ asks: (1) is the claimant currently employed; (2) does the claimant have a severe impairment; (3) does the claimant have an impairment meets or equals one of the impairments listed by the Commissioner, as disabling; (4) can the claimant perform their past relevant work; and (5) can the claimant perform other work in the national economy.

6

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868. The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868; *Knight*, 55 F.3d at 313.

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

2. *Analysis*

Hoeppner argues that after ten years and four attempts, his RFC still does not properly account for all of his moderate limitations in concentration, persistence, or pace ("CPP"). (Pl.'s Br. at 10, Docket # 17.) While I agree, the ALJ is not entirely blameworthy. This particular issue generates much litigation and will continue to do so, as getting it right the first time is no easy task. Hoeppner's case is a prime example of this. During Hoeppner's second trip to federal court, Judge Griesbach very aptly explained why he was compelled to remand Hoeppner's case on the CPP issue, despite his inclination to affirm it if he was writing on a clean slate. To understand why this is so, it is helpful to provide some background and explanation as to how the SSA is instructed to evaluate mental impairments and how the Seventh Circuit law on this issue has developed.

2.1     How the SSA Evaluates Mental Impairments

At step two of the five step sequential analysis for determining disability, the ALJ asks whether the claimant has a medically determinable impairment that is "severe." During the administrative process, a State agency psychological consultant completes a form called the Psychiatric Review Technique ("PRT") (although nowadays the form is completed electronically), in which he or she assesses whether the claimant has a medically determinable impairment that is severe, and then rates the claimant's abilities in four broad functional areas: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. 20 C.F.R. § 404.1520a. The degree of limitation is rated on a five-point scale: none, mild, moderate, marked, or extreme. *Id.* If the State agency consultant concludes that the claimant's mental impairment is severe but does not meet or medically equal a listing, then a detailed assessment of the claimant's mental RFC is provided

8

by the consultant on a form called a Mental Residual Functional Capacity Assessment ("MRFCA") form (or again, on the electronic equivalent).

Section I of the MRFCA form, entitled "Summary Conclusions," contains boxes the examiner can check evaluating the claimant in four different areas: understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (Tr. 580–81.) Section III of the MRFCA form is entitled "Functional Capacity Assessment" and instructs the examiner to explain his or her summary conclusions in a narrative form. (Tr. 582.) In the SSA's Program Operations Manual System ("POMS"), "a primary source of information used by Social Security employees to process claims for Social Security benefits," the interplay between Section I and Section III is explained. *See* DI 24510.060–65, *available at* https://secure.ssa.gov/apps10/poms.nsf/partlist. The POMS states that Section I is "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment." *Id.* It explains that Section III "is for recording the mental RFC determination. It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.* In other words, the POMS provides that Section III of the MRFCA form contains the examiner's RFC assessment, *not* Section I.

### 2.2 Seventh Circuit Case Law Interpretating this Interplay

It is against this backdrop that CPP litigation has exploded. Because the POMS instructs the State agency consultants to put their RFC determination in Section III of the MFRCA form, which explains (and presumably includes) the limitations opined in Section I, ALJs, understandably, assume that Section III contains the *entire* RFC assessment of the

9

claimant's work abilities, even if the narrative section does not specifically address each of the limitations found in Section I. But while the employees of the SSA are guided by the POMS in evaluating Social Security claims, the POMS "'is a policy and procedure manual that employees of the [agency] use in evaluating Social Security claims and does not have the force and effect of law,' even if it might sometimes be persuasive." *O'Donnell v. Saul*, 983 F.3d 950, 958 (7th Cir. 2020) (quoting *Davis v. Sec'y of HHS*, 867 F.2d 336, 340 (6th Cir. 1989)).

The Seventh Circuit's 2002 decision in *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002), a case oft-cited by the Commissioner in support of upholding the ALJ's CPP finding, muddied the Agency's understanding of how to evaluate these claims. In *Johansen*, a State agency consultant found Johansen "ranged between" moderately limited and not significantly limited in the following Section I areas: (1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and (3) the ability to accept instructions and respond appropriately to criticism from supervisors. *Id.* at 285–86. The State agency consultant wrote in Section III that Johansen could perform repetitive, low-stress work. *Id.* at 286. The RFC limited Johansen to repetitive, low-stress work. *Id.* at 288. When Johansen challenged the sufficiency of this RFC, the Seventh Circuit found that the ALJ reasonably relied on the State agency consultant's translation in Section III of his Section I findings. *Id.* at 289. Looking at *Johansen*, then, it is understandable why the Commissioner frequently argues that the ALJ can rely on Section III's narrative translation of the Section I findings.

10

Some clarity to this issue, however, came in *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014). In that case, the State agency consultant opined that Yurt was moderately limited in six work-related functions on Section I of the MRFCA form; however, he simply stated in Section III's narrative that Yurt retained the capacity for unskilled work. 758 F.3d at 857–58. The Seventh Circuit held that the ALJ erred in relying upon the consulting psychologist's conclusion that Yurt retained the capacity for unskilled work because this narrative did not account for the consultant's opinion that Yurt was moderately limited in the six work related functions found in Section I of the MRFCA form. *Id.* The Commissioner argued that *Johansen* says otherwise, but the Seventh Circuit found it distinguishable.

Specifically, the *Yurt* court first considered the fact that Johansen was moderately limited in his ability to: (1) perform activities within a schedule; (2) complete a normal workweek and perform at a consistent pace; and (3) accept instructions and respond appropriately to criticism, *id.* at 858, which were not the same areas that Yurt was limited in. Second, the *Yurt* court said *Johansen* was distinguishable because the translation to "repetitive, low-stress work" specifically excluded positions likely to trigger Johansen's panic disorder, which formed the basis of his limitations in CPP. *Id.* Finally, the *Yurt* court generally found that a limitation to simple, routine tasks and limited interactions with others does not adequately capture temperamental deficiencies and limitations in CPP. *Id.* at 858–59. As such, the court found the RFC deficient. Thus, while *Yurt* did not explicitly overrule *Johansen*, the clarity coming with *Yurt* is that reliance on Section III's narrative translation in determining RFC is insufficient.

The following year, the Seventh Circuit decided *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), a case where the ALJ credited the opinion of the State agency psychological consultant

11

who completed Section I of the MRFCA form, but failed to include the narrative statement of the claimant's mental RFC in Section III of the form. The *Varga* court held that "where, as here, no narrative translation exists—because of error on the part of the doctor or the agency—an ALJ's hypothetical question to the VE must take into account any moderate difficulties in mental functioning found in Section I of the MRFCA form, including those related to concentration, persistence, or pace." *Id.* at 816. Thus, the lesson taken from *Varga* is that Section I's limitations *can* be RFC findings, despite what the POMS states.

Soon thereafter, in *Pingel v. Colvin*, 156 F. Supp. 3d 947 (E.D. Wis. 2016), Judge Griesbach grappled with how *Yurt* and *Varga* instructs consideration of one's limitations in CPP. He noted that the Seventh Circuit seemed to be saying that despite the clear language of the POMS that the checklist in Section I of the MRFCA form is *not* an RFC assessment, the court was requiring the limitations in Section I to be included in the RFC:

> *Yurt* apparently requires the ALJ to compare the checked boxes in Section I of the MRFCA form to the consultant's narrative summary of the claimant's mental RFC in Section III and then add limitations for those functions for which the "moderately limited" box is checked if they are not otherwise accounted for in the consultant's narrative conclusion. In other words, the ALJ may not assume that the consultant has followed the Agency's instructions in completing the MRFCA form and incorporated into his Section III narrative a "detailed explanation of the degree of limitation for each category [of work-related function]."

*Id.* at 958. Several years later, the Seventh Circuit decided *DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019). In *DeCamp*, the State agency psychologist opined DeCamp had moderate limitations in maintaining concentration, persistence, or pace. In completing the MRFCA form, she opined in Section I that DeCamp was moderately limited in her ability: (1) to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and (2) to complete a normal workday and workweek without

12

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 673. In Section III, she explained that DeCamp "may have some difficulty with concentration and persistence at times but she is able to meet the demands of basic unskilled work." *Id.* With this information, the ALJ limited DeCamp to "unskilled work with an SVP of 2 or less, with no fast-paced production line or tandem tasks, at a job that allows her to be off task up to 10% of the workday." *Id.* at 675.

The *DeCamp* court found that the ALJ's RFC did not properly account for DeCamp's moderate limitations in concentration, persistence, or pace because it omitted the moderate limitations identified by another State agency consultant whose opinion the ALJ credited. Specifically, moderate limitations in: maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination or proximity to others without being distracted; and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace. *Id.* The court found that limitations to "unskilled work" with no "fast-paced production line or tandem tasks" did not account for all of those credited limitations. The court further found that even though all of the State agency psychiatrists the ALJ relied on also included narrative explanations (Section III of the MRFCA form), "the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms." *Id.* at 676. Thus, the ALJ cannot "focus[ ] her analysis on the doctors' bottom-line conclusion . . . without giving the

13

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 673. In Section III, she explained that DeCamp "may have some difficulty with concentration and persistence at times but she is able to meet the demands of basic unskilled work." *Id.* With this information, the ALJ limited DeCamp to "unskilled work with an SVP of 2 or less, with no fast-paced production line or tandem tasks, at a job that allows her to be off task up to 10% of the workday." *Id.* at 675.

The *DeCamp* court found that the ALJ's RFC did not properly account for DeCamp's moderate limitations in concentration, persistence, or pace because it omitted the moderate limitations identified by another State agency consultant whose opinion the ALJ credited. Specifically, moderate limitations in: maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination or proximity to others without being distracted; and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace. *Id.* The court found that limitations to "unskilled work" with no "fast-paced production line or tandem tasks" did not account for all of those credited limitations. The court further found that even though all of the State agency psychiatrists the ALJ relied on also included narrative explanations (Section III of the MRFCA form), "the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms." *Id.* at 676. Thus, the ALJ cannot "focus[ ] her analysis on the doctors' bottom-line conclusion . . . without giving the

13

[VE] any basis to evaluate *all* of [plaintiff's] impairments, including those in concentration, persistence, and pace." *Id.* (emphasis in original).

As an interesting contrast, that same year, in *Burmester v. Berryhill*, 920 F.3d 507 (7th Cir. 2019), the court upheld an RFC limiting Burmester to "simple, routine, repetitive tasks requiring only simple work-related decisions with few changes in the routine work setting and no more than occasional interaction with supervisors, coworkers, and the general public" as properly accounting for her moderate difficulties in sustaining concentration, persistence, or pace. *Id.* at 509, 511. In that case, however, the ALJ gave great weight to the opinion of a treating doctor who completed a "Statement of Work Capacity" that assessed Burmester as having the "ability to understand, remember and carry out simple instructions subject to physical limitations," finding that "maintaining concentration and attention should be manageable," and finding that she "should be able to withstand routine work stress and adapt to typical job site changes." *Id.* at 511. The *Burmester* court distinguished its case from that in *DeCamp*, finding that unlike in *DeCamp*, "there was no such checkbox indicating a moderate limitation, there was only the Statement of Work Capacity indicating that concentrating at work would be manageable for Burmester." *Id.* at 512.

With this history in mind, Judge Griesbach faced Hoeppner's second federal court challenge to the ALJ's RFC attempting to accommodate his moderate limitations in CPP. In reversing and remanding the case, Judge Griesbach found that "[i]t is now abundantly clear that under the law of this circuit, the ALJ must include in the RFC, and in the corresponding hypothetical question to the VE, all of the limitations the ALJ finds in the paragraph B criteria at steps 2 and 3 of the sequential evaluation, as well as those in the 'summary conclusions' or 'worksheet' section of the MRFCA form." 399 F. Supp. 3d at 778.

14

More recently, in this case and in others, the Commissioner points to the Seventh Circuit's decision in *Pavlicek v. Saul*, 994 F.3d 777 (7th Cir. 2021), decided in April of this year, as "pertinent and significant authority" on the CPP issue. (Docket # 24.) In *Pavlicek*, the Seventh Circuit does not explicitly state the specific Section I findings Pavlicek was moderately limited in, so I turned to the district court's decision to find this information. According to the district court, a State agency consultant opined Pavlicek was moderately limited in the following four areas in Section I of the MRFCA form: (1) understanding and remembering detailed instructions; (2) carrying out detailed instructions; (3) maintaining attention and concentration for extended periods; and (4) completing a normal workday and workweek without interruptions from psychologically based symptoms or performing at a consistent pace without an unreasonable number and length of rest breaks. *Pavlicek v. Saul*, No. 19-CV-41-SLC, 2020 WL 2092762, at *2 (W.D. Wis. May 1, 2020), *aff'd*, 994 F.3d 777 (7th Cir. 2021). In Section III, the State agency consultant's narrative description stated:

> The medical evidence available supports that the claimant is able to carry out simple instructions, follow simple work-like procedures, and make simple work-related decisions. Also claimant maintains the ability to sustain attention throughout extended periods of time (up to 2 hours at a time). [Medical evidence] endorses that the claimant maintains the ability to perform at a consistent pace particularly if [he] is engaged in a [sic] simple, repetitive tasks. [Medical evidence] supports that the claimant have [sic] an adequate ability to maintain an [sic] regular schedule.

*Id.* In the RFC, the ALJ limited Pavlicek to: understanding, remembering, and carrying out simple instructions and routine, repetitive tasks, which are defined [in the Dictionary of Occupational Titles] as having a GED language level of 1 and a reasoning level of 2 or below; capable of making simple work-related decisions or judgments, in an environment without fast-paced production requirements and with few, if any, changes in work duties; limited to only occasional, brief and superficial, interaction with the public and coworkers; limited to

only occasional interaction with supervisors; and within the above limits, able to attend work, pay attention, and concentrate at work tasks within tolerable limits within the competitive economy. *Id.* at *4. The district court found the RFC sufficiently accounted for Pavlicek's moderate limitations in CPP.

In upholding the district court's finding, the Seventh Circuit concluded that the ALJ "reasonably relied on the narrative RFC because it was in fact consistent with the 'moderate' checklist ratings." 994 F.3d at 783. The court found that if one is "moderately" limited, that does not mean he is performing "bad" or "inadequately," but it means he functions "fair" in that area. *Id.* Thus, the court concluded that "a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Id.*

### 2.3 Where the Law Currently Stands

Although the Commissioner argues that *Pavlicek* has changed the nature of the Seventh Circuit's CPP analysis, she is wrong. *Pavlicek* has not changed *DeCamp*. What is clear for the law of this circuit is that, to the extent the SSA relies on an MRFCA form to find moderate limitations in CPP, the ALJ *must* include *all* of the Section I and Section III limitations in the RFC and corresponding hypothetical to the VE. Additionally, *Burmester* teaches that if the MFRCA form is *not* used, then a plaintiff is on shakier ground relying on *Yurt* and its progeny to argue for remand. *Pavlicek* teaches that if Section III of the MFRCA form encapsulates all of the Section I limitations, *then* the ALJ can rely on it. But ALJs should tread very carefully when doing so. The Section III "translation" should use language that makes it crystal clear that all limitations from Section I were included before the ALJ relies on the Section III translation in formulating the RFC and corresponding hypothetical to the VE.

16

Thus, an ALJ's most prudent course of action is, as Judge Griesbach has noted, to include *all* of the limitations from Sections I and III into the RFC and corresponding hypothetical to the VE.

### 2.4    Application to This Case

In this case, while Hoeppner generally argues that the ALJ still has completely failed to properly account for his moderate limitations in CPP in the RFC, this is clearly incorrect. Where the RFC continues to lack is in accounting for two moderate limitations found in Section I of the MRFCA form: (1) the ability to maintain attendance and (2) the ability to be punctual within customary tolerances.

To review, the ALJ found Hoeppner had several severe mental impairments: depression, generalized anxiety disorder, ADHD, learning disorder, and somatoform disorder. (Tr. 1605.) Although he found Hoeppner did not meet a Listing, the ALJ found Hoeppner moderately limited with regard to concentrating, persisting, or maintaining pace. (Tr. 1607.) The ALJ accorded significant weight to the opinions of Drs. Kojis, King, and Rozenfeld. (Tr. 1620–21.) These three State agency consultants opined as follows on Section I of their respective MRFCA forms:

| MRFCA Form Section I Sustained Concentration and Persistence | Dr. Kojis (Tr. 580–82) | Dr. King (Tr. 155–59) | Dr. Rozenfeld (Tr. 1062–67) |
|---|---|---|---|
| The ability to carry out detailed instructions | Moderately Limited | Moderately Limited | Not significantly limited |
| The ability to maintain attention and concentration for extended periods | Moderately Limited | Moderately Limited | Moderately Limited |
| The ability to perform activities within a schedule, maintain regular attendance, and | Moderately Limited | Moderately Limited | Not significantly limited |

17

| | | | |
|---|---|---|---|
| be punctual within customary tolerances | | | |
| The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods | Moderately Limited | Moderately Limited | Moderately Limited |
| The ability to work in coordination with or proximity to others without being distracted by them | Not significantly limited | Not significantly limited | Moderately Limited |
| **MRFCA Form Section III Narrative** | Claimant has no worse than moderate limitations with respect to meeting some basic mental work demands | He has adequate memory and concentration for simple, routine work | Claimant would have moderate limitations in performing at a consistent pace due to symptoms of depression and anxiety |

Because the ALJ accorded significant weight to these three opinions, all of these Section I findings *must* be included in the RFC. Note that two of the areas—(1) The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and (2) the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods—are really multi-part abilities. Thus, mapping out the Section I limitations and how they are accounted for (or not) in Hoeppner's RFC looks something like this:

| MRFCA Form Section I Sustained Concentration and Persistence | RFC |
|---|---|
| The ability to carry out detailed instructions | The claimant is limited to jobs that are unskilled and involve simple and routine tasks and instructions. |
| The ability to maintain attention and concentration for extended periods | The claimant can maintain attention and concentration for two-hour segments. |
| (1) The ability to perform activities within a schedule, (2) maintain regular attendance, and (3) be punctual within customary tolerances | (1) He is limited to jobs involving no fast-paced work.<br><br>(2) ?<br><br>(3) ? |
| (1) The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and (2) to perform at a consistent pace without an unreasonable number and length of rest periods | (1) The claimant is limited to jobs that are unskilled and involve simple and routine tasks and instructions.<br><br>(2) He is limited to jobs involving no fast-paced work. |
| The ability to work in coordination with or proximity to others without being distracted by them | He can have occasional interaction with the public, coworkers, and supervisors. |

Thus, as I see it, where the RFC still falls short is in accounting for Hoeppner's moderate limitations in his ability to maintain regular attendance and to be punctual within customary tolerances. Clearly the ALJ thought about this limitation at the fourth hearing. He asked the VE the following question:

> And in terms of what employers will tolerate with employees being absent or missing work, how much absenteeism is okay before the employer, in your opinion, is going to cut the person loose or replace them with somebody else?

(Tr. 1673). To which the VE responded:

19

> Typically if a person misses two and a half days a month in a combination of being tardy, leaving work early, missing the whole day, that would be work preclusive. . . ."

(*Id.*) For whatever reason, however, this limitation is still missing from the RFC. Perhaps it is because this area less intuitively lends itself to a limitation one would believe an employer would accept. What employer wants someone moderately limited in getting to work on time? Judge Griesbach made this very point early on in Hoeppner's case: "if a person is unable to maintain the attention and concentration needed to . . . maintain regular attendance and be punctual within normal tolerances . . . he or she can presumably hold no job that exists in the national economy." *Hoeppner*, 399 F. Supp. 3d at 776. Judge Griesbach also noted, however, that if a moderate limitation in those areas *in fact* meant that *no job* existed for that claimant, "then one would think that the State agency consultants, who are paid to provide the expert opinions needed to decide a claim, would say so." *Id.* But what does a "moderate" limitation in absenteeism and punctuality actually look like? Does it mean that one will only be absent and/or tardy for the acceptable 2.5 days per month? The ALJ would be wise to address this question as well or this will be the next area of litigation.

The bottom line is, given the Seventh Circuit's authority, a limitation for this checkbox must be fashioned. Some examples of RFCs containing such limitations are as follows: *Magee v. Colvin*, No. 1:13-CV-01723-TWP, 2015 WL 1417619, at *3 (S.D. Ind. Mar. 26, 2015) ("[T]he work must allow, on average, one absence a month with an absence being defined as failing to appear for a scheduled shift, being tardy for a scheduled shift, or leaving early for a scheduled shift.); *Holmes v. Astrue*, No. CIV.A. 08-545, 2009 WL 688914, at *11 (W.D. Pa. Mar. 12, 2009) (". . . and with the ability to be off tasks up to 10 percent of the work period and tardy or absent up to two days per month."); *Corker v. Saul*, No. 3:20-CV-00138-WGC,

2021 WL 916919, at *4 (D. Nev. Mar. 9, 2021) (" . . . and she would be absent, tardy, or depart early one-half day two times a month.").

Whether jobs still exist that Hoeppner can perform with the extremity of his restrictions remains to be seen. But the ALJ must properly include and consider these limitation on remand. Because this case is being remanded to reconsider the RFC and hypothetical questions given to the VE, I will not address Hoeppner's additional argument challenging the reliability of the VE's testimony under *Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018).

## CONCLUSION

Given the law in this Circuit, it is not difficult to see why a case like Hoeppner's is on its fourth trip through the administrative process. Properly accounting for a claimant's moderate limitations in CPP is no easy task, and certainly does not lend itself well to the use of template or other techniques the Administration likely uses to ease its substantial workload. And in Hoeppner's case, the Commissioner has almost nearly gotten the RFC right. But the great amount of time and resources it will take to get there invite the Administration to spend more time on the front end of these cases assessing CPP to prevent the flurry of litigation they ultimately create.

Hoeppner argues that the ALJ erred in finding that he was not disabled under the Social Security regulations. I find that the ALJ's decision was not supported by substantial evidence and thus remand is required. Thus, the Commissioner's decision is reversed and the case is remanded for further proceedings consistent with this decision.

**ORDER**

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this decision pursuant to 42 U.S.C. § 405(g), sentence four.

> **IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 15th day of September, 2021.

BY THE COURT

NANCY JOSEPH
United States Magistrate Judge

22